Good afternoon. We're ready to hear arguments in the one case we have scheduled. The case is Stroup v. United Airlines and we're ready to hear from the appellant. Thank you Judge Briscoe and thank you to all members of the panel for rescheduling this argument at my request. My name is Marcy Glenn and I represent the appellant United Airlines. This age discrimination appeal is primarily about pretext, which plaintiffs needed to prove because it was undisputed that there was no direct evidence of causation, no direct evidence that plaintiffs ages caused United's decisions to terminate them, and also because it was undisputed that United had proper and non-discriminatory reasons for those termination decisions. Specifically, plaintiffs admitted violations of United's policies and their admitted lies during the disciplinary process. I don't use the word lie lightly, but that's what plaintiffs own attorney Mr. Lane said to the jury during the trial, and I'm quoting, they committed the violations and then they lied to United Airlines. They lied and they admitted to you, yeah it's a lie. So all that being as it is, we in pretext, we look at the reasons initially given and then the reasons later given. And so just as you've described, do we have two different rationale going on here? We have the initial charges that was that were lied on, and then we have the dishonesty or lying as you put it. Well actually the consistency is in the violations. The investigation began with a complaint by another flight attendant about plaintiff's conduct in watching videos during a flight while they were on duty, and that was what United investigated when it asked Mr. Bagway to observe them. That was also what United found that the violations were in the end. At the same time, Mr. Whitaker, who was the decision maker, took into account plaintiff's credibility as any decision maker would have to do as he listened to the facts and the evidence presented by United and by the plaintiffs themselves. He was in some cases hearing inconsistent stories, plaintiffs changed their stories along the way. So yes, to that extent he was certainly paying attention to their credibility and that wasn't something that was part of the initial charges against them. Mr. Dodge, after he investigated their conduct, he prepared letters of charge that were strictly focused on the policy violations that he concluded there was evidence that they had committed. It was when Mr. Whitaker met with them, conducted the hearings, and heard their story that he concluded that he couldn't trust them, frankly, and he did factor that into his eventual decision. But I thought the letters of charge, just like an indictment, and just as an analogy, I thought they were supposed to define the boundaries of what you could, the discipline that you could be imposed. In other words, they were the predicate or would be the predicate for any was the policy and understanding of United. And that's one question, and if so, I can understand Mr. Whitaker factoring in credibility in determining whether to impose, to find them guilty of the charges, but that is discreet from using credibility as an independent basis to impose discipline. So I guess my question is, is it not the case that the letters of charge were supposed to define the boundaries of the grounds for discipline? And if so, then why isn't it a regular practice for him to consider as an independent basis that dishonesty? I'm not, I really don't think that he did consider it as an independent basis. I think he factored it into his determination. I actually think that the paperwork, the internal paperwork that he sent to United's Human Resources Department, which plaintiffs have pointed to actually as a procedural irregularity, it wasn't that because that paperwork wasn't required at all. But what it does confirm is that the violations that he found were the violations stated in the charges. He did not find as an independent violation these people are dishonest and therefore they deserve to be terminated. But I thought his testimony in fact tracked what you just said, which is he said at bottom, I couldn't trust them. And why isn't that a statement that that was the ground for discipline in that situation, which would be improper, right? Or irregular is a better word. Well, I don't think it would be improper, and I'll circle back to that. But I also don't think that he said very as clearly as you read it, Judge Holmes, that he was finding their dishonesty an independent basis for a great concern to me. But he also... I thought he posed it as, in large part, my decision was based on dishonesty. I thought we had that phraseology. To the extent that it meant that he could not trust their testimony. But what he said about why he reached the decision, the termination decision, is on page 3582 of the appendix. And there he said, the safety and security of that aircraft was paramount to me. I think the lack of focus on our customers was very concerning to me. Again, this is not normal behavior to do this. This is not something our flight attendants do. And so the consistency is on the focus on the violations, which were what were in the complaint that Ms. Sims presented, what was in the letters of charge, what Mr. Bagway reported on. He certainly had no ability to report on their honesty or dishonesty. Significantly, Mr. Dodge made a point of drafting the letters of charge, even though they had been dishonest during the investigation process. He didn't include that in the letters of charge because he wanted to focus, and he needed to focus, on the actual policy violations. Well, I'm not sure how that helps because, I mean, it suggests that their dishonesty would not have been something that would have been included as a regular course, as a basis for discipline. I mean, they did lie, and they acknowledged that they were dishonest in those proceedings. Well, I'd be the first to acknowledge that United doesn't have a policy that says, if you are being investigated for other violations, don't lie during the investigation and don't lie at your hearings. They probably should have a good lawyer to advise that that would be a good idea. I'd suggest that it's a given in any employment relationship and in any disciplinary process that it's a good idea not to lie and that you don't need a policy to say that, and you also don't need to charge someone with dishonesty in order to take that into consideration when the hearing conductor is deciding whether to believe what they have to say about the actual charged violations. Well, let me ask this. I mean, to the extent that your position is that he only considered, Mr. Whitaker only considered their honesty or dishonesty in the hearing as a factor influencing his determination of the charged conduct, as it relates to that, isn't the charged conduct very, wasn't the record, doesn't the record say the charged conduct is rarely the subject of this kind of discipline in connection with a first offense? I'm sorry, are you asking whether the record said that? Whether, based upon the testimony that is in the record, one could conclude that the kind of conduct that took place here was rarely the subject of discipline of termination on a first offense. Well, I would have to disagree with that. There was actually only... I'm asking you, if there's evidence in the record that you're aware of, let me know. Yeah, there is. The only evidence in the record of this kind of offense involved another flight attendant who was terminated after the incident. The incident being watching videos during a flight. Now, the plaintiffs will tell you why the facts in that situation were egregious, be that as it may, the fact remains she was terminated. There's no evidence of any other flight attendant being disciplined for watching videos while on duty on a flight. There's also no evidence that United was ever aware of any other flight attendant watching videos because its policies prohibit it. Well, is there evidence related to United employing progressive discipline policies vis-a-vis your employees? And if so, why would they... why couldn't... and see, the point is not whether in the abstract we think this is the right way to go. The point is whether a reasonable jury could infer that some deviation in policy reflected pretext to discriminate. Absolutely, and I will tell you that that there is no policy that required United to impose or apply progressive discipline. This is like the Tillerman case, where the progressive discipline argument was a fallacy because while the collective bargaining agreement included progressive discipline as an option, it was completely discretionary. And you wouldn't be surprised that when we're dealing with flight attendants who are entrusted with the safety and security of passengers, that United's collective bargaining agreement made clear that it had the discretion to not impose progressive discipline for violations that it deemed serious enough to warrant termination or any level of discipline. Of course, I wouldn't doubt that, but the point I'm making is what... there's one thing to say that you... the employer reserves the discretion not to employ progressive discipline in a particular instance. It's another thing to say in the overwhelming majority of cases, in the majority of cases, progressive discipline is applied. Understood. Okay, well I'm asking you... Understood, and there was no evidence of that. Absolutely none, and I'm sure Mr. Lane will correct me if I'm forgetting something. I hate doing this, but I want to save my last few minutes for rebuttal, but the one point I want to make before I do is that what this case is really about is the business judgment rule, and it's a doctrine that this court has recognized time... Well, well, well, business judgment, doesn't that come in in the world of summary judgment? I mean, you're saying that's the Miller case that you're relying on? No, I'm relying on cases like Doan and Fallis and Manning where the court reversed District Court's denial of Rule 50 motions based on the business judgment rule, and they did it because the employer proffered a non-discriminatory proper reason for its decision, and regardless of whether the judges or the jury thought it was a wise or unwise or correct or incorrect or just plain dumb decision, they respected an employer's right to exercise its business judgment as long as there was no evidence of discriminatory animus, as long as it was an honestly held belief. And that's the kicker, right? If there is evidence of discriminatory animus, then you can't stand on, it's my business and I can... Absolutely, absolutely, but there isn't that evidence here, and the pretext evidence that plaintiffs rely on, A, doesn't prove pretext. It's insufficient evidence of pretext for all the reasons we've argued and I don't have time to address right now, but beyond that, it certainly isn't evidence of discriminatory animus. So I'm going to reserve my last couple of minutes. Thank you. Mr. Lane. Thank you. May it please the court. My name is David Lane for Plaintiff Appellees. I'm going to pick up right where counsel left off with the business judgment question. In order to avail oneself of the business judgment rule, they have to believe that their actual reasons for termination were business judgment. A jury concluded here that no, those were pretextual reasons. They were not exercising business judgment. They were engaged in a pretext to fire them for age discriminatory reasons, which is exactly what they did. And in answer to Judge Holmes's comment about what about, you know, the of the Seventh Circuit that talks about swatting a fly with a sledgehammer. It's on page 40 of our brief. Um, but that's exactly what happened here. Ken Kyle, the union rep, testified that he expected maybe a letter of reprimand at worse. Um, and he also testified that, yes, indeed, there is progressive discipline at United Airlines. Uh, this was not progressive discipline. The apparent rule is that, you know, if there's a major safety violation, a pilot or a flight attendant shows up drunk, they don't have to go through progressive discipline. But if if something you're not wearing an apron when you're doing drink service or you're serving water the wrong way, minor violations, it's it's been progressive discipline. And let me and let me frame it this way. The question is not, as I see it, whether they had to go through progressive discipline. What has been their customary practice? And what does the record say as it relates to that? Because that is what creates the basis for deviation as to generally not viewed as non safety serious matters. Has it been the general course of affairs for United to apply progressive discipline? That's the issue, I think. Absolutely, Your Honor. Both Stroop and Lee testified to that. And Ken Kyle, the union representative, testified to that. You were cut off a little bit before you start talking about Ken Kyle. Who else testified to that? I apologize. Stroop and Lee both testified and Ken Kyle testified to that based on my recollection. Um, you know, I mean, what we have here is a brief, you know, submitted by United Airlines that goes on and on and on about making the same arguments, the make those arguments to judge the late Judge Daniel, who rejected those arguments at halftime. They made the same arguments to Judge Domenico, who rejected their motion for a new trial. And now they're recycling these same arguments to your honors. But it's a completely one sided argument. If I don't know if any of your honors have, you know, deep drilled down into the but these witnesses were impeached at every turn of the road and clear the clear jury instructions, which were never disputed by United Airlines. The credibility instruction not objected to that's number 11 12 impeachment instruction not objected to 17 age discrimination elements not objected to business judgment. Instruction 18. The progressive discipline issue. Um, there was some statement, I think, in the briefing about well, we didn't have to apply that. Or maybe it was testimony. We didn't have to apply that to these plaintiffs because they were union members. I think what they were testifying to is progressive discipline only applies to attendance issues now, but not disciplinary issues. And that was a point of dispute during the trial that United has apparently changed their policy. And now progressive discipline only has to go to to that attendance was progressive discipline in effect when this term these terminations occurred. The testimony was from Stroop, Lee and Kyle that yes, they all thought progressive discipline was the rule of the day. Let me ask you, assuming assuming just for the sake of argument that we were to find that there was error in the admission of the emotional distress evidence, which what's your strongest top line argument for why any such error would be was not prejudicial? Well, first of all, we have a jury instruction from the court and I'm talking about jury instruction. Number 20 emotional distress damages are not available to plaintiffs. Secondly, jury instruction. Um, number uh, hang on a second. It's the constructive discharge jury instruction. Uh, the constructive discharge jury instruction talks about how would a reasonable person feel under these circumstances? So the jury instruction itself as, uh, the case law supports. How would a reasonable person feel? Well, then that opens the door to some very, very nondescript testimony and noncontroversial testimony. But well, how did Stroop and Lee feel about this? And did they feel the same way a reasonable person would feel? The actual jury instruction uses the word feel, um, how a reasonable person would feel. So asking them how did this make you feel? And they basically testified. Um, well, made me feel really stressed, really bad. I was under a lot of pressure and it was terrible. So I had no choice. I had to resign. Um, that's garden variety testimony. There is nothing prejudicial about that, especially in light of the jury instruction that specifically said they don't get emotional distress damages. They complain about. Oh, well, you sandbag us in discovery. We asked about that. You said there's not gonna be any significant testimony along those lines. And there wasn't. Had we put on a psychologist or a psychiatrist or some witness to testify that these two were huddled under their bed in the fetal position, crying about the emotional distress they've suffered, then they'd have a point. But here, Judge Daniel specifically limited the testimony to how did this? How did you as a which is consistent with the jury instruction on constructive discharge? Uh, so. So that is my, uh, answer to that issue. Um, Council, let me ask you about willfulness while we're jumping around on different issues. What? And before we get there, what was your evidence of discrimination? What was the evidence of a discriminatory animus that that you that you brought to the trial? Well, it is, you know, as has been said, uh, the U. S. Supreme Court in Reeves versus Sanderson Plumbing has recognized that in the 21st century, employers are savvy enough not to make announcements over loudspeaker that all old people report to the exits. No, I'm with you on the law. Just tell me what your evidence is. What did you? How did you prove it? It's all pretext. Everything we showed the jury. There was no direct evidence of age discrimination. I said that to the jury. I'll say that to this court because employers don't give us direct evidence in the 21st century. It's all true. But you don't. I mean, you don't win a case on pretext, do you? I mean, you have to. You have to prove a discriminatory animus. You can prove that their reason that they that they cook up is a lie or disingenuous. But you have an initial burden. Well, we have the initial burden of going forward to show that they were in a protected age category, which we did, that they were adequately performing their jobs. We did, and they got terminated on that. The reasons given for the termination were protectual. Reeves versus Sanderson Plumbing says pretext evidence alone is more than sufficient to sustain a finding by a jury of age discrimination. And in fact, the age discrimination instruction which was given to the jury, which was not objected to by United, says just that. If they find pretext, they may infer discriminatory intent. They don't have to, but they may infer it. If the offered explanations by United are so outrageously ridiculous that they then may infer that the actual reason was age discrimination. And that's what happened in this case. Okay, so I wanna I wanna talk about how that might play into willfulness. I mean, so just winning your case doesn't mean that was willful, correct? Does it? What do you have? I mean, what do you have that is when my case plus that gets you into a finding of willfulness? What was your evidence of willfulness? Well, you know, willfulness under the the haze and paper test, uh, from the U. S. Supreme Court. I have to show that they knew or showed this was reckless disregard as to whether their conduct violated the age discrimination laws. Um, and willfulness and jury instruction. 21 was correctly stated by the court. Did United know? And did they act in reckless disregard about whether their conduct was prohibited? But haze and paper says there is not a required two tiered analysis. The same evidence that supports a finding of age discrimination is relevant to a determination of willfulness. United admits that on page 19 of their reply brief, they say, Yes, I don't. I don't necessarily contest that. I But you how do you distinguish? I mean, what? What is it about your evidence that that pushed it over the top? I mean, I'll give it to you that you for argument that that you beat him and that you were able to get a verdict. But But what pushes you over the top as far as willfulness? Okay, willfulness. First of all, Mr Whitaker, the decision maker in this case, testified at trial that before you can terminate someone at United, you have to contact the legal department, not the H. R. Department used to be the H. R. Department. But then he said at trial, you have to contact the legal department. So which is a multinational multibillion dollar corporation understands that the law of age discrimination exists. And then did they? Did they act in reckless disregard to that law? And the answer is based on all of the outrageous pretext that was shown. Uh, that is evidence of willfulness as well. They were aware of the age discrimination laws because that's presumably what was told to them by their legal department. Well, but even even his testimony, doesn't he say he was aware of the A. D. A. And that and that he that they received training and there and United is good about training about these issues. Absolutely. He did testify to that. Everybody testified to that from United's perspective. So is it your position then that if you know about the A. D. A. And you've received training and you go to court and lose that you're it's ipso facto. You've got a willful violation. No, there could be a situation where, for example, a low level, low level supervisor is engaged in age discrimination. But the company itself is not. And his low level supervisor concocts some pretext reasons for termination. Um, but the age discrimination and they don't know anything about this, and the company may have even been negligent in not looking into this more deeply than that's not willful on the company's part. Um, but here they ran this up the chain of command all the way up to their legal department. And these air such minor transgressions to terminate these two very senior employees, uh, the company could be seen to have acted in reckless disregard of the age discrimination laws when you're terminating a 30 year employee like Jeannie Stroop for not wearing an apron. Come on. Somebody needs to look at that up the corporate chain when you're terminating her. Ruben Lee for turning sideways during a safety demonstration and, you know, handing out plastic cups in a way that United doesn't like or using an earbud or sitting on a crate. All of these were totally shot down on cross examination. They are protectual reasons, and United has an obligation. If some senior employees are going to be terminated, uh, and legal gets a call from Whitaker, you know, I think they need to look at it. They can't just recklessly disregard the protectual nature of what's going on here. Somebody united needed to say you're just terminating two employees of 71 years experience with United Airlines. Ruben Lee was given a commendation for his actions and saving a flight one day that had to do a belly landing at Dulles Airport because their landing gear didn't work. He was the guy that got everybody out of that plane safely. I mean, come on. That wasn't even considered by United Airlines in the termination decision. Someone up the corporate chain needs to look at this, and they didn't. And that is reckless disregard for the protectual nature of what happened here. So that is my best shot on pretext. The emotional distress I think we've dealt with. Uh, you know, the jury instruction Spulak versus K Mark talks about how would a reasonable person feel? And by by invoking how someone feels, that opens the door to very limited emotional distress testimony, which is exactly what Judge Daniel limited it to here. It wasn't extensive. It wasn't excessive. Uh, it was simply Yeah, I really felt bad about getting this ultimatum. My time is up. Thank you all for your attention. I appreciate it. Thank you. Yes. Rebuttal time. Thank you. Couple points I need to make progressive discipline. Mr Kyle, the union representative did not testify that aggressive discipline was required in this situation. I refer you to pages 13 to 14 of our reply brief where we fully explain what he did testify to and what he didn't testify to. I have to push back on the premise in one of the questions and certainly in council's responses that these were minor violations. I'm not surprised that Mr Lane is focusing on the apron and wearing a name tag and all of that. But the testimony, the evidence of the Mr Whitaker based his termination decisions on what he deemed the serious violations. The watching a video on a short flight when the plaintiffs did not have any brakes hunched in the back of an airplane with their backs to 160 passengers for which they were the sole flight attendants had sole responsibility with a video on an iPad hidden in a beverage cart while they perched on unsecured metal carts. It's in our brief. We have a picture of it on page 10. That was a big deal to United. Those that were serious violations when you're talking about a plane hurtling through the sky. As far as what the jury decided and that proves these are minor, absolutely not. That's the whole point of the business judgment rule. It doesn't matter whether we or the jury thinks that these were ticky tacky stupid little violations as Mr argument. That is irrelevant. What matters is whether United honestly believed that they affected the safety and security of the plane and violated their policies and that they thought they had a good reason to terminate them wrong or right and the cases make that very clear. Our briefs will address, I'll have to rely on our briefs to address the questions that were asked on liquidated damages and emotional distress. I believe that our briefs actually cover those points adequately but in closing I would just like to emphasize that if this verdict is upheld, what that means is that flight attendants on a major airline with all these people in the air can disregard their duties, watch videos repeatedly, not just on this flight. They admitted doing it repeatedly and then lie about it, use an e-cigarette on the out and the airline cannot take disciplinary action against them. It cannot exercise its business judgment to enforce its policies. I certainly hope that that is not the law in the Tenth Circuit. Thank you. Thank you, counsel. Thank you both for your arguments this afternoon and your case is submitted.